<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

_____
                              :

GUSTAVO I. LEVYA,                :

                 :

        Plaintiff,             :

                 :               Civil Action No. 07-553 (JAG)

             v.              :

                 :               **OPINION**

COMMISSIONER OF SOCIAL    :

SECURITY ADMINISTRATION,   :

                 :

                 :

        Defendant.         :

_____:

<u>**GREENAWAY, JR., U.S.D.J.**</u>

      Plaintiff Gustavo Leyva ("Plaintiff"), pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g)[1],

seeks review of the Social Security Commissioner's (the "Commissioner") decision denying his

applications for Supplemental Social Security Income ("SSI") and Disability Income Benefits

("DIB").  Plaintiff argues that the decision is not supported by substantial evidence, as required

by § 405(g), and that the Commissioner erred as a matter of law in denying his application.  For

the reasons set forth below, this Court finds that the Commissioner's decision is supported by

substantial evidence, and shall be affirmed.

_____

      [1]  These sections of the Social Security Act (the "Act") provide that any individual may
obtain a review of any final decision of the Secretary of Health and Human Services made
subsequent to a hearing to which he or she was a party.  The federal district court for the district
in which the plaintiff resides is the appropriate place to bring such an action.  42 U.S.C. § 405(g).

# I. **PROCEDURAL HISTORY**

On February 4, 2004, Plaintiff filed applications for SSI and DIB, pursuant to sections 216(I), 223, and 1614(a)(3)(A) of the Social Security Act, codified at 42 U.S.C. §§ 416(I), 423, 1382c(a)(3)(A).[2]  (Tr. 52-54.)  Plaintiff's applications were based on his alleged disabilities stemming from an ankle fracture, depression, lumbar disc disease, a history of hypertension and tuberculosis, abdominal pain, and gallstones.  (Tr. 21-22.)  Following denial of Plaintiff's application on April 23, 2004 (Tr. 28), Plaintiff timely submitted a request for reconsideration on May 17, 2004.  (Tr. 34.)  However, the previous determination denying Plaintiff's applications was upheld on August 13, 2004.  (Tr. 36.)

Plaintiff requested a hearing before an administrative law judge on September 9, 2004. (Tr. 40.)  Plaintiff appeared before Administrative Law Judge Joel J. Friedman ("ALJ Friedman") on November 17, 2005.  (Tr. 51.)  Plaintiff argued that Plaintiff had a continuing disability due to the combination of his impairments, or, in the alternative, that Plaintiff experienced a closed period of disability from August 31, 2003 through June of 2005, two months following the removal of pins from his ankle.  (Tr. 20.)

ALJ Friedman issued a decision on March 30, 2006 finding that Plaintiff was not eligible for DIB or SSI benefits based upon his disabilities. (Tr. 23.)  The following is a summary of ALJ Friedman's findings:

> 1.  The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

---

[2]  The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405(g). "Tr." refers to said transcript.

2. The claimant has not engaged in substantial gainful activity since August 31, 2003.

3. The claimant's residuals of fractured ankle is [sic][3] a "severe" impairment, based upon the requirements in the Regulations (20 C.F.R. §§ 404.1520 and 416.920).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform the exertional demands of sedentary work.

7. The claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant is a "younger individual" (20 C.F.R. §§ 404.1563 and 416.963).

9. The claimant has a "high school education" (20 C.F.R. §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968).

11. Based on an exertional capacity for sedentary work, the claimant's age, education and work experience, a finding of "not disabled" is directed by Medical-Vocational Rules 201.23/24.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

_____

[3] This Court interprets this statement to contain a typographical error. ALJ Friedman stated in the Analysis section of his decision that Plaintiff's residuals of fractured ankle is not severe. Thus, this Court shall interpret paragraph three of ALJ Friedman's summary of the findings to mean that ALJ Friedman found that Plaintiff's residuals of a fractured ankle is not severe.

(Tr. 23-24.)

Based on these findings, ALJ Friedman concluded that Plaintiff was not entitled to a period of disability, DIB benefits, or SSI payments under §§ 216(I), 223, 1602 and 1614(a)(3)(A), respectively, of the Social Security Act.  (Tr. 24.)

On December 21, 2006, acting Adminstrative Appeals Judge Adelaide Edelson denied Plaintiff's request for review of ALJ Friedman's decision.  (Tr. 4.)  Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), Plaintiff filed the instant action, seeking reversal of the Commissioner's decision.

## II. STATEMENT OF THE FACTS

### A.    Background

Plaintiff was born on August 8, 1962 in Peru, immigrated to the United States in 1982, and became a naturalized citizen in 1992.  (Tr. 416.)  Plaintiff obtained his high school education in Peru, and testified that he speaks a limited amount of English.  (Id.)

Since Plaintiff's entry into the United States, his employment experience has consisted of maintenance work.  (Tr. 421.)  During the hearing with ALJ Friedman, Plaintiff testified that his job prior to his injury required him to be on his feet constantly and lift objects weighing between seventy and eighty pounds. (Tr. 421-22.)  Plaintiff alleges that he was laid off from his job in July of 2003, due to the psychological depression from which he suffered after separating from his wife.  (Tr. 422.)

### B.    Claimed Disabilities

Plaintiff twisted and fractured his left ankle on August 9, 2003.  Plaintiff alleges that he became disabled on August 31, 2003 due to his broken ankle and a positive reaction to

tuberculosis.  (Tr. 17.)  Plaintiff also stated that he suffered from depression due to separation

from his wife.  (Id.)

Plaintiff expressed subjective complaints concerning lumbar spinal disease, possible disc

herniation, abdominal pain, and gallstones.  (Tr. 20-21.)  Plaintiff testified that he suffers from

anxiety and poor memory.  (Tr. 20.)  He also asserted that he has trouble sleeping, "hears voices

wanting to hurt him[,] and swears a lot."  (Id.)  Plaintiff takes prescription medication for

depression, high blood pressure, and stomach pain.  (Id.)

**C.**     **Medical Evidence Considered by ALJ**

The record indicates that Plaintiff has been evaluated by physicians on several

occasions.

1.     *Raritan Bay Medical Center*

On August 31, 2003, Plaintiff was admitted to the emergency room at the Raritan Bay

Medical Center (the "Center") after twisting his left ankle the night before, while intoxicated.

(Tr. 173.)  X-ray pictures of the ankle showed a fracture of the medial malleolus[4] with separation

and fracture of the distal fibula[5] and the posterior malleolus[6].  (Id.)  Plaintiff was diagnosed with

---

[4] The medial malleolus is "the rounded process of the tibia forming the internal surface of
the ankle joint.  Also called internal malleolus." MOSBY'S MEDICAL, NURSING, & ALLIED
HEALTH DICTIONARY 440 (6th ed. 2002).

[5] This Court understands distal fibular to mean the section of the fibula bone that is
furthest away from the knee and closer to the ankle, as distal means "away from or fartherst from
a point of origin or attachment," and the head of the fibula is closer is the portion of the fibula
closest to the knee.  MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 536, 678 (6th
ed. 2002).

[6] While the court cannot accurately define the term posterior malleolus, external
malleolus is "a rounded bony prominence on either side of the ankle joined." MOSBY'S MEDICAL,
NURSING, & ALLIED HEALTH DICTIONARY 646 (6th ed. 2002). A posterior malleolar fracture is "a

a trimalleolar fracture[7] of the left ankle.  (Id.)  On September 1, 2003, Plaintiff underwent an

open reduction and internal fixation (ORIF)[8] (Tr. 187), performed by Dr. Imtiaz Chaudhary, and

was released from the hospital the following day with crutches.  (Tr. 169.)

Medical records dated between October of 2003 through January 30, 2004 from the

Center stated that physical examinations of Plaintiff's ankle indicated that the ankle was healing

well.  (Tr. 124-52.)  The examinations also showed no evidence of infection or localized

tenderness, less swelling, and neurological intactness.  (Tr. 130.)  X-rays showed that Plaintiff's

ankle had good position and alignment.  (Tr. 134.)  While visiting the Center, Plaintiff

complained of abdominal pain on the left side, low back pain, and depression, with no suicidal

ideation.  (Tr. 127.)

X-ray results of Plaintiff's left ankle, dated October 1, 2004, showed a "healed medial

malleolar and distal fibular, internal fixation pins[9] and no acute fractures."  (Tr. 385.)  Additional

---

fracture of the back of the 'shin bone' at the level of the ankle joint."  American Academy of
Orthopaedic Surgeons, http://orthoinfo.aaos.org/topic.cfm?topic=A00391.

[7] A trimalleolar fracture is also referred to as a Cotton's fracture, which is "a fracture
involving the medial, lateral, and posterior malleoli of the ankle."  MOSBY'S MEDICAL, NURSING,
& ALLIED HEALTH DICTIONARY 440 (6th ed. 2002).

[8] An open reduction is "a surgical procedure for reducing a fracture or dislocation by
exposing the skeletal parts involved."  MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH
DICTIONARY 1223 (6th ed. 2002) An internal fixation is "any method of holding together . . .
fragments of a fractured bone without the use of appliances external to the skin.  After open
reduction of the fracture, through an appropriate incision smooth or threaded pins, Kirschner
wires, screws, plates attached by screws, or medullary nails may be used to stabilize the
fragments."  MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 911 (6th ed. 2002)

[9] Internal fixation pins are a type of internal fixation which are used to hold a broken bone
in place and to give the bone support until the bone is strong enough to bear weight by itself.
See http://orthoinfo.aaos.org/topic.cfm?topic=A00196.

x-rays taken on June 24, 2005 and July 22, 2005 also showed a healed ankle fracture.  (Tr. 312,

316.)  On July 7, 2005, at the Center, Plaintiff underwent surgical exploration of the medial and

lateral side of the left ankle to remove the screws and pins. (Tr. 294.)

On August 31, 2005, Plaintiff visited the Center for a chest examination.  (Tr. 378-79.)  A

chest abdomen CT scan showed signs of possible central disc herniation at L1-L2[10].  (Tr. 378.)

Soft tissue density in Plaintiff's gallbladder was noted.  (Id.)  Drs. Marvin Platt and Laura

Grygotis recommended an additional six month follow-up study.  (Id.)  On October 12, 2005, a

transabdominal right upper quadrant ultrasound was performed on Plaintiff, which revealed

findings suggestive of cholelithiasis[11] and "fatty infiltration of the liver."  (Tr. 376.)

2.   *Dr. Alvaro Gutierrez*

On February 25, 2004, Dr. Alvaro Gutierrez, a state agency doctor, conducted an

examination of Plaintiff.  (Tr. 195.)  During Plaintiff's examination, Plaintiff complained of

being easily distracted, isolated, and lacking any motivation.  (Tr. 197.)  Plaintiff denied

hallucinations, paranoid delusions, suicidal ideation, and homicidal ideation.  (Id.)  Plaintiff was

able to perform a serial seven test[12], knew the name of the last three presidents, and was oriented

---

[10]   Central disc herniation is the herniation of the "lower lumbar segments of the back".
Wheeless' Textbook of Orthopaedics, http://www.wheelessonline.com/ortho/disc_herniation.  A
herniated disk is "a rupture of the fibrocartilage surrounding an intervertebral disk, releasing the
nucleus pulposus that cushions the vertebrae above and below.  The resultant pressure on spinal
nerve roots may cause considerable pain and damage the nerves, resulting in restriction of
movement."  MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 808 (6th ed. 2002).

[11]   Cholelithiasis is defined as "the presence of gallstones in the gallbladder."  MOSBY'S
MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 350 (6th ed. 2002).

[12]   A serial sevens is a clinical test used to evaluate mental function.  The test is conducted
by having a patient count backwards from one hundred in intervals of seven.
http://medical-dictionary.thefreedictionary.com/

to time, place, and person.  (Id.)  Dr. Gutierrez diagnosed Plaintiff as suffering from major

depression, but also concluded that Plaintiff's condition does not warrant SSI and DIB benefits.

(Id.)

       3.   *Dr. Betty Vekhnis*

     On March 16, 2004, Plaintiff met with Dr. Betty Vekhnis, a state agency doctor.  (Tr.

198.)  Dr. Vekhnis reviewed Plaintiff's past medical records and conducted a physical

examination, and concluded that Plaintiff had residual mild swelling in the ankle, some loss of

motion, and residual pain on weight bearing.  (Tr. 200.)  Dr. Vekhnis's physical examination also

revealed a mild antalgic gait[13] and full range of motion.  (Tr. 199.)  Dr. Vekhnis noted that

Plaintiff used a cane, but was able to walk without it.  (Id.)  Plaintiff could also squat as well as

mount and dismount the examining table, without assistance.  (Id.)

     An examination of the ankle revealed a "well healed surgical vertical incision over the

lateral and medial malleoli."  (Tr. 200.)  Additionally, "[e]xamination of the left lower extremity

show[ed] full, non-tender range of motion [in] the hip, knee and ankle."  (Id.)   Plaintiff's muscle

strength was 5/5,[14] and Plaintiff's neurovascular examination was normal.  (Id.)   Additionally,

Dr. Vekhnis's examination of the cervical and lumbar spine revealed no tenderness or paraspinal

muscle spasm.  (Id.)  Dr. Vekhnis noted that Plaintiff had full range of motion in his back.  (Id.)

---

    [13]An antalgic gait is "a characteristic gait resulting from pain on weightbearing in which
the stance phase of gait is shortened on the affected side." Online Medical Dictionary,
http://cancerweb.ncl.ac.uk/cgi-bin/omd?antalgic+gait.

    [14] Muscle strength can be graded on a scale of 0 to 5, 0 signifying no visible muscle
contraction, and 5 signifying normal strength.  THE MERCK MANUAL OF DIAGNOSIS AND
THERAPY 1751 (18th ed. 2006).

4. *Raritan Bay Mental Health Center*

On June 9, 2004, Plaintiff was referred to the Raritan Bay Mental Health Center (the "Mental Health Center"), due to feelings of depression.  (Tr. 245.)  During his interview, Plaintiff complained of "anxiety, low frustration tolerance, depression, auditory hallucinations, and delusional ideation with somewhat persecutory trends." (Tr. 247.)  Plaintiff also complained of problems sleeping, occasional increased appetite, and marginal social interaction.  (Id.)  Plaintiff's responses during the interview were "relevant and coherent."  (Id.)  Plaintiff denied having hallucinations, as well as suicidal impulses, ideation, and intent.  (Id.)  Plaintiff was alert, able to focus, had fair judgment, and had no memory deficits.  (Id.)  Plaintiff was diagnosed with "mood disorder due to his ankle fracture and possible malingering."  (Id.)  Plaintiff seemed to be aware of his need for help.  (Id.)

5. *Dr. Imtiaz Chaudhary*

On July 8, 2005, Dr. Imtiaz Chaudhary, a surgeon from the Center, examined Plaintiff and concluded that Plaintiff was limited with respect to standing and climbing, but not walking.  (Tr. 240.)  Dr. Chaudhary also concluded that Plaintiff was disabled from July 25, 2005 to August 8, 2005 because of the removal of the pins from his ankle.  (Tr. 241.)

## III. **DISCUSSION**

A. **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision, pursuant to 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different conclusion.  Blalock, 483 F.2d at 775.

**B.**     **Statutory Standards**

        The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002).  Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as a disability if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.**     **The Five Step Evaluation Process and the Burden of Proof**

        Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[15]  20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not

_____

        [15] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

"disabled" and the disability claim will be denied.  Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant suffers from a severe impairment.  20 C.F.R. § 404.1520(a)(ii)(c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  See id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If the claimant's impairment(s) meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[16] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.  (Id.)  An ALJ satisfies this standard by "clearly

_____

[16] Hereinafter "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

evaluating the available medical evidence in the record and then setting forth that evaluation in

an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia

v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional

capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to

perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the

Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional
> capacity enables her to perform her past relevant work. This step involves three
> substeps: (1) the ALJ must make specific findings of fact as to the claimant's
> residual functional capacity; (2) the ALJ must make findings of the physical and
> mental demands of the claimant's past relevant work; and (3) the ALJ must
> compare the residual functional capacity to the past relevant work to determine
> whether claimant has the level of capability needed to perform the past relevant
> work.

Burnett, 220 F.3d at120.  If the claimant is unable to resume his past work, and his condition is

deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

demonstrate that there are other jobs existing in significant numbers in the national economy

which the claimant can perform, consistent with his medical impairments, age, education, past

work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds

a significant number of jobs that claimant can perform, claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the

Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a

result of "disabled" or "not disabled" according to combinations of vocational factors, such as

age, education level, work history, and residual functional capacity.  These guidelines reflect the administrative notice taken of the jobs in the national economy that exist for particular combinations of vocational factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458, 462 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003).  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 F. App'x. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability); see also Marcus v. Barnhart, No. 02-3714, 2003 WL 22016801, at *2 (E.D. Pa. Jun. 10, 2003) (stating that "the burden was on [Plaintiff] to show that the combined effect of her impairments limited one of the basic work abilities").

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the

14

decision.  See, e.g., Rivera v. Commissioner, 164 F. App'x. 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

**D.    ALJ Friedman's Findings**

ALJ Friedman applied the five step evaluation process and determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 19.)

In step one of the analysis, ALJ Friedman found that Plaintiff had "not engaged in any substantial gainful activity since August 31, 2003."  (Id.)

Regarding steps two and three, ALJ Friedman concluded that the medical records regarding Plaintiff's ankle injury, "[did] [sic][17] disclose any medical sign and findings which meet or equal the clinical criteria of any impairments listed in Appendix I, Subpart P to Regulations No. 4."  ALJ Friedman reasoned that "the requirements of Listing 1.02 were not met because there was no evidence of gross anatomical deformity and chronic joint pain and stiffness with involvement of one major peripheral joint in the hip, knee or ankle, resulting in inability to ambulate effectively, as defined in 1.00B2b."  (Id.)  ALJ Friedman found that medical records also revealed only mild antalgic gait, and that Plaintiff was able to walk without a cane.  (Id.)

Under step four, ALJ Friedman concluded that Plaintiff cannot perform his past relevant work as a maintenance worker because such work would require "exertion beyond [Plaintiff's] present residual capacity."  (Tr. 22.)  ALJ Friedman continued on to step five and found that

---

[17] This Court interprets ALJ Friedman's statement about his findings regarding steps two and three of the five-step evaluation process to contain a typographical error.  As such, this Court interprets the statement to state that Plaintiff had residuals of a fractured ankle, but does not disclose any medical signs and findings which meet or equal the clinical criteria of any impairments listed in Appendix I, Subpart P to Regulation No. 4.

Plaintiff's residual functional capacity would allow him "to perform the demands of sedentary work, or work which is generally performed while sitting and never requires lifting in excess of [ten] pounds." (Id.)  In arriving at this conclusion, ALJ Friedman considered Plaintiff's testimony describing his daily routine, which included taking daily walks, going to the library, using public transportation, cleaning his room, making his bed, cooking, and grocery shopping. ALJ Friedman also noted the fact that, at the hearing, Plaintiff displayed little discomfort rising to take the oath. (Id.)

In addition, ALJ Friedman considered Plaintiff's age and education. (Tr. 23.)  Plaintiff, a forty three year old man at the time, was a younger individual, (20 C.F.R. §§ 404.1563 and 416.963) and had a high school diploma. (Tr. 23.)  Ultimately, ALJ Friedman concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of ALJ Friedman's decision. (Id.) (citing 20 C.F.R. §§ 404.1520(e) and 415.920(e)).

**E.    Analysis**

Plaintiff contends that ALJ Friedman's decision should be reversed, and that Plaintiff should be awarded DIB and SSI benefits, because ALJ Friedman's decision was not supported by substantial evidence. (Pl. Br. 18.)  Specifically, Plaintiff argues that: (1) his ankle injury, depression, and lumbar disc disease are all severe impairments; and (2) the ALJ erred in his use of the vocational rules to deny disability at step five of the evaluation process. (Pl. Br. 22, 29.)

1.    *Severity of Impairments*

Plaintiff contends that ALJ Friedman erred in analyzing the severity of his injuries. (Pl. Br. 29.)  In assessing whether a claimant has a severe injury, an ALJ must inquire into whether the evidence presented by the claimant demonstrates more than a slight abnormality which has more than a minimal effect on the claimant's ability to work. Newell v. Comm'r of Soc. Sec.,

347 F.3d 541, 546-547 (3d Cir. 2003).  "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue."  Id. (citing Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).

ALJ Friedman's evaluation of the severity of Plaintiff's injuries was substantially supported by evidence.  Medical records by Dr. Vekhnis illustrate that, after Plaintiff had the pins removed from his ankle, Plaintiff had a mild antalgic gait, but was able to walk without a cane. (Tr. 200.)  Furthermore, x-rays of Plaintiff's left ankle "revealed [a] well healed fracture."  (Id.) Dr. Vekhnis' examination results support ALJ Friedman's conclusion that Plaintiff's ankle injury did not constitute more than a slight abnormality which caused more than a minimal effect on Plaintiff's ability to work.

Plaintiff's statements regarding his daily activities further support ALJ Friedman's findings.  At the hearing, Plaintiff testified that "he spends his time walking, going to the library to read, cooking, cleaning, going to church, visiting his son," going shopping, and using public transportation.  (Id.)  Plaintiff's allegations about the impact of his impairments are contradicted by his testimony.

Plaintiff argues that ALJ Friedman's designation of his ankle injury as "not severe" is inconsistent with a statement in the Findings section declaring that Plaintiff's ankle injury is, in fact, a severe impairment.  This Court emphasizes that, despite contradictory language in ALJ Friedman's decision regarding the severity of the ankle injury, substantial evidence supports ALJ Friedman's conclusion that the ankle injury nevertheless does not satisfy any of the Listings. Medical records by Dr. Vekhnis illustrate that, after Plaintiff had the pins removed from his ankle, Plaintiff had a mild antalgic gait, but was able to walk without a cane.  (Id.)  Furthermore,

x-rays of Plaintiff's left ankle "revealed [a] well healed fracture."  (Id.)  Dr. Vekhnis' examination results support ALJ Friedman's conclusion that Plaintiff's ankle injury did not constitute more than a slight abnormality which caused more than a minimal effect on Plaintiff's ability to work.

Plaintiff's statements regarding his daily activities further support ALJ Friedman's findings.  At the hearing before ALJ Friedman, Plaintiff testified that "he spends his time walking, going to the library to read, cooking, cleaning, going to church, visiting his son," going shopping, and using public transportation.  (Id.)  Since Plaintiff's fractured ankle did not satisfy any of the Listings, it alone did not entitle Plaintiff to the receipt of benefits.  Plaintiff also failed to show that his depression, alone or in combination with his other impairments, was severe enough to qualify him for SSI or DIB benefits.  See Williams, 244 F. Supp. 2d at 369 (stating that burden is on the claimant to demonstrate claimant's impairments in combination qualify claimant for benefits).

Primarily, Plaintiff failed to proffer sufficient medical evidence to allow for a conclusion that Plaintiff's depression is severe.  Plaintiff's counsel seems to question how Plaintiff's depression is not severe, since Plaintiff's depression is "major."  (Pl. Br. 22-23.)  Although Dr. Gutierrez diagnosed Plaintiff as having a major depressive disorder, Dr. Gutierrez also observed that Plaintiff was "able to follow instructions and the topic of conversation."  (Tr. 197.) Plaintiff's examination with Dr. Gutierrez also revealed that Plaintiff was "oriented to time, place, and person and denied suicidal homicidal ideations or hallucinations."  (Id.)  Furthermore, medical records from the Mental Health Center noted that "[Plaintiff's] concentration was unimpaired, no memory deficits, insight was fair, judgment was adequate and [the physicians at the medical center] considered that he might be malingering."  (Tr. 247.)  In short, medical

18

evidence from both Dr. Gutierrez and the Center substantiate ALJ Friedman's decision concerning the severity of Plaintiff's depression.

The medical evidence also does not corroborate Plaintiff's argument that his back injury constitutes a severe ailment. The medical records contain a CT scan of his chest dated August 2005, which indicates "possible" central disc herniation at L1-2. However, no additional medical evidence exists to supplement the CT scan results. (Tr. 21.) The medical evidence also does not indicate that Plaintiff required treatment for back problems. (Id.) Furthermore, the examination of Plaintiff's cervical and lumbar spine by Dr. Vekhnis revealed no tenderness or paraspinal muscle spasms, but rather full range of motion. (Tr. 200.) Therefore, ALJ Friedman's decision regarding the severity of Plaintiff's alleged back injury was substantially supported by evidence.

2. *Application of Medical-Vocational Guidelines*

Plaintiff also contends that ALJ Friedman should not have referred to the Medical-Vocational Guidelines at step five of the analysis because Plaintiff suffers from a non-exertional limitation, namely, depression. Once it is determined that a claimant is unable to perform his former job, "the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment [the claimant] is able to perform." Kangas, 823 F.2d at 777; see also Chicager v. Califano, 574 F.2d 161 (3d Cir. 1978); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f). If a claimant is determined to be incapable of performing past relevant work, then the vocational guidelines will be used in assessing what other types of work the claimant will be able to perform in the alternate. 20 C.F.R. § 404.1560(c)(1).

The vocational guidelines cannot be used if the claimant suffers from both exertional and non-exertional limitations, however. Sykes v. Apfel, 228 F.3d 259, 267 (3d Cir. 2000). "Exertional impairments affect only a claimant's 'ability to meet the strength demands of jobs

19

(sitting, standing, walking, lifting, carrying, pushing, and pulling).'" <u>Nicewicz v. Apfel</u>, 38 F. App'x 809, 812 (3d Cir. 2002) (citing 20 C.F.R. § 404.1569(b)).  "In contrast, non-exertional impairments affect a claimant's ability to handle other demands of the job. Examples include pain, nervousness, anxiety, depression, and inability to concentrate or remember." <u>Id.</u> (citing 20 C.F.R. § 404.1569(c)).

Here, Plaintiff argues that the medical vocational guidelines should not have been used at step five of the disability evaluation process because Plaintiff's depression causes non-exertional restrictions.  (Pl. Br. 31.)  However, ALJ Friedman stated, "The medical consultants at the State Agency (DDS) found that the claimant's depression was not severe, and I agree with this analysis, which is completely consistent with the credible evidence in the record." (Tr. 22.)  Dr. Gutierrez found that Plaintiff was able to perform a serial seven test, knew the name of the last three presidents, and was oriented as to time, place, and persons.  (Tr. 197.)  Months later, when he was examined at the Raritan Bay Mental Health Center, Plaintiff was found to have relevant and coherent responses to questions, and revealed no evidence of psychosis.  (Tr. 247.)  Plaintiff denied having hallucinations or suicidal impulses, ideations, or intent.  (<u>Id.</u>)  At that time, Plaintiff was only diagnosed as having "mood disorder."  (<u>Id.</u>)

Based on a review of the record, this Court finds that substantial evidence supports ALJ Friedman's use of the vocational guidelines, as Plaintiff did not suffer from any non-exertional limitations.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


Dated: May 27, 2008


 S/Joseph A. Greenaway, Jr.

JOSEPH A. GREENAWAY, JR., U.S.D.J.